**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| TEMARA HONORE, MELLANE MOTTLEY, BRENDA LAFORCE, SADE SOUTHWELL, ALICIA SUPERSAUDE, SHARON HENRY, SONIA STRAUN, JANICE DANIEL, MARIAM SARGUSINGH, KERMISHA SARGUSINGH, DELORES BESS, and CHAVORN CAMACHO,<br><br>    **Plaintiffs,**<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE a/k/a USDA, RURAL DEVELOPMENT f/k/a FARMERS HOME ADMINSITRATION, VIRGIN ISLANDS HOUSING FINANCE AUTHORITY, EARLE G. ROBINSON, and SANTA CRUZ CONSTRUCTION,<br><br>    **Defendants.** | Civil Action No. 2016-0055 |

**Attorneys:**
**Martial A. Webster, Esq.,**
St. Croix, U.S.V.I.
 *For Plaintiffs*

**Angela Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
 *For Defendant United States Department of Agriculture*

**Flavia E. Logie, Esq.,**
St. Croix, U.S.V.I.
 *For Defendant Virgin Islands*
 *Housing Finance Authority*

**Yohana M. Manning, Esq.,**
St. Croix, U.S.V.I.
 *For Defendants Earle G. Robinson*
 *and Santa Cruz Construction*

**MEMORANDUM OPINION**

**Lewis, District Judge**

THIS MATTER comes before the Court on four motions: **(1)** Defendant United States Department of Agriculture's ("USDA") Second "Motion to Dismiss Amended Complaint for Lack of Jurisdiction" ("Second Motion to Dismiss") (Dkt. Nos. 58, 59) and the exhibits attached thereto, Plaintiffs' Response (Dkt. No. 69), Defendant USDA's Reply (Dkt. No. 70), and Plaintiffs' Sur-Reply (Dkt. No. 73); **(2)** Plaintiffs' "Motion to Amend First Amended Complaint" ("Motion to Amend") (Dkt. No. 71) and the exhibits attached thereto, Defendant USDA's Response (Dkt. No. 74), and Plaintiffs' Reply (Dkt. No. 78); **(3)** Plaintiffs' "Motion for an Evidentiary Hearing" (Dkt. No. 86) and the exhibits attached thereto, and **(4)** Plaintiffs' "Motion to Defer Ruling on [Defendant USDA's Second] Motion to Dismiss Amended Complaint for Lack of Jurisdiction [Pending Evidentiary Hearing]" ("Motion to Defer Ruling") (Dkt. No. 85) and the exhibits attached thereto, Defendant USDA's Response to items 3 and 4 (Dkt. No. 88), and Plaintiffs' Reply (Dkt. No. 91).

For the reasons that follow, the Court will grant Defendant USDA's Second Motion to Dismiss and deny Plaintiffs' Motions to Amend, for an Evidentiary Hearing, and to Defer Ruling.

**I.     BACKGROUND**

**A. Factual Background**

As alleged in the First Amended Complaint, the twelve plaintiffs each own land in Estate St. Georges on St. Croix in the United States Virgin Islands. (Dkt. No. 52 at ¶¶ 4-14). Plaintiffs received financing from Defendants USDA and the Virgin Islands Housing Finance Authority ("VIHFA") to purchase their land and build homes on their properties, *id.* at ¶ 20, and the two agencies allegedly "recommended and referred" Plaintiffs to Defendants Earle G. Robinson

2

("Robinson") and Santa Cruz Construction. *Id.* at ¶¶ 28-30. Defendant Santa Cruz Construction is owned and operated by Defendant Robinson. *Id.* at ¶ 19.

Defendants Robinson and Santa Cruz Construction entered into construction contracts with Plaintiffs, *id.* at ¶ 31, but Plaintiffs claim that Robinson and Santa Cruz Construction ultimately "failed to build and construct safe and structurally viable homes for the Plaintiffs based on the adverse characteristics of the soil in Estate St. Georges," *id.* at ¶ 34. Plaintiffs assert that they "immediately" began to experience various structural issues with their homes once the construction was completed, including, without limitation: leaking roofs; improperly levelled ground; and cracked ceilings, walls, floors, and cisterns. *Id.* at ¶¶ 39-46. Defendant Robinson allegedly made unsatisfactory repairs when Plaintiffs raised these issues, and some Plaintiffs have reportedly been required to hire other contractors because their homes have become uninhabitable. *Id.* at ¶¶ 45-48.

As relevant to the four instant motions, Plaintiffs allege, with respect to Defendant USDA: that the agency "recommended and referred" Plaintiffs to Defendants Robinson and Santa Cruz Construction on assurances that Defendant Robinson would build them "quality" houses, but that he did not, *id.* at ¶¶ 28, 30; that the agency knew or should have known—based on a virtually identical prior lawsuit—that there were problems with the soil at Estate St. Georges "that resulted in a severe settling problem and major structural damages to homes built by Defendant Robinson," but the agency "failed to disclose to Plaintiffs the risk of building a home in Estate St. Georges with Defendant Robinson as the contractor," *id.* at ¶¶ 32, 35-36; and that the agency was "required to make periodic inspections" but "failed to observe the substandard construction by Defendant Robinson . . . and failed to properly inspect [Plaintiffs' properties and the ongoing construction] before authorizing payments for substandard work performed by Defendant Robinson," *id.* at

3

¶¶ 37-38. Plaintiffs bring claims against USDA for breach of express and implied warranties (Count II) and breach of contract (Count III). *Id.* at ¶¶ 55-60.

### B. Procedural Background

Plaintiffs filed their initial Complaint in August 2016, seeking damages for misrepresentation, fraud, breach of contract, and breach of express and implied warranties. (Dkt. No. 1). Defendant USDA then filed its first motion to dismiss under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, arguing that Plaintiffs' claims are barred by sovereign immunity, and that Plaintiffs failed to exhaust their administrative remedies. (Dkt. Nos. 16, 17). In response, Plaintiffs requested leave to amend their Complaint (Dkt. No. 21), which the Court granted (Dkt. No. 24). After Plaintiffs filed their First Amended Complaint (Dkt. No. 52), the Court denied Defendant USDA's first motion to dismiss as moot (Dkt. Nos. 50, 51). Defendant USDA then filed its Second Motion to Dismiss—the first of the four motions at issue here—in which Defendant USDA renewed its earlier sovereign immunity and exhaustion arguments as challenges to the Court's subject matter jurisdiction under Rule 12(b)(1). (Dkt. Nos. 58, 59).

In response, Plaintiffs filed a Motion to Amend their First Amended Complaint (Dkt. No. 71)—the second motion at issue here—which Defendant USDA opposes on futility grounds (Dkt. No. 74). Plaintiffs also requested limited jurisdictional discovery so as to permit them to adequately respond to Defendant USDA's exhaustion arguments. (Dkt. Nos. 69, 73). The Court granted Plaintiffs' motion for limited jurisdictional discovery, and further ordered Plaintiffs to submit supplemental briefing on both the sovereign immunity and exhaustion issues—after USDA

4

provided jurisdictional discovery—with Defendant USDA's own supplemental briefing to follow.[1] (Dkt. No. 80).

Defendant USDA timely noticed service of the relevant discovery (Dkt. No. 81), and the Court then granted Plaintiffs multiple extensions to file their supplemental briefing (Dkt. Nos. 82, 84). On September 23, 2021, the third deadline for Plaintiffs to submit their supplemental briefing (*see* Dkt. No. 84), Plaintiffs neither filed their briefing nor requested an extension of time to do so. Instead, Plaintiffs filed the two remaining motions at issue, asking the Court to conduct an evidentiary hearing to inquire further into the exhaustion—but not the sovereign immunity—issue (Dkt. No. 86), and to defer ruling on Defendant USDA's Second Motion to Dismiss pending that hearing (Dkt. No. 85). Defendant USDA opposes both motions. (Dkt. No. 88).

As detailed below, the Court finds that Plaintiffs' claims against Defendant USDA are barred by sovereign immunity (Section II), and that Plaintiffs' proposed Second Amended Complaint cannot cure the resulting defect in the Court's subject matter jurisdiction (Section III). Accordingly, the Court will grant Defendant USDA's Second Motion to Dismiss and deny Plaintiffs' Motion to Amend. Further, because the Court resolves Defendant USDA's Second Motion to Dismiss on grounds of sovereign immunity, it declines to reach the parties' arguments regarding the exhaustion of administrative remedies. Consequently, the Court will also deny Plaintiffs' Motion for an Evidentiary Hearing on the exhaustion issues, as well as Plaintiffs' Motion to Defer ruling on the Defendant USDA's Second Motion to Dismiss pending that hearing, as moot (Section IV).

---

[1] Plaintiffs had previously failed to address Defendant USDA's sovereign immunity arguments in either their Response (Dkt. No. 71) or Sur-Reply (Dkt. No. 73) to Defendant USDA's Second Motion to Dismiss. (Dkt. Nos. 58, 59).

5

## II.   DEFENDANT USDA'S SECOND MOTION TO DISMISS

### A. Applicable Legal Principles

Under Federal Rule of Civil Procedure 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action,* 678 F.3d 235, 243 (3d Cir. 2012). The first step in evaluating a 12(b)(1) motion is to address whether it presents a "facial" or "factual" attack on the plaintiff's claims. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). A facial challenge contests the court's subject-matter jurisdiction "without disputing the facts alleged in the complaint and requires the court to consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quotation marks omitted). A factual challenge, by contrast, asserts that the underlying facts of the case do not support jurisdiction. *Aichele*, 757 F.3d at 358. When addressing a factual challenge, a court may therefore consider evidence outside the pleadings, *id.*, and "no presumptive truthfulness attaches to plaintiff's allegations," *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).

The doctrine of sovereign immunity shields the United States from suit where it has not "unequivocally expressed" consent to be sued. *United States v. Bormes*, 133 U.S. 6, 10 (2012). Sovereign immunity goes directly to subject matter jurisdiction. *See Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 395 (3d Cir. 2012) ("Without a waiver of sovereign immunity, a court is without subject matter jurisdiction."); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

Congress has partially abrogated the sovereign immunity of the United States for claims sounding in contract under the Tucker Act, 28 U.S.C. § 1346(a)(2). *See Chabal v. Reagan,* 822

F.2d 349, 353 (3d Cir. 1987) ("Jurisdiction over non-tort monetary claims against the United States is exclusively defined by the Tucker Act . . . because it is only under the terms of the Tucker Act that the United States waives its sovereign immunity to non-tort claims seeking monetary relief."). The Tucker Act waives sovereign immunity, and confers jurisdiction on federal district courts, for contract claims against the United States that seek damages of no more than $10,000 if such claims are "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort[.]" 28 U.S.C. § 1346(a)(2).

The Tucker Act creates no substantive right to damages. *Mitchell,* 463 U.S. at 216-17. Because the plaintiff bears the burden to prove the court has subject matter jurisdiction, *see Mortensen*, 549 F.2d at 891, the plaintiff must therefore identify a "constitutional provision, statute, regulation, or contract that independently creates a substantive right to money damages." *Fleming v. United States*, 413 F. Supp. 2d 503, 505 (E.D. Pa. 2005); *United States v. Testan*, 424 U.S. 392, 400 (1976).

### B. Analysis

Plaintiffs allege, in substance, that USDA failed to provide Plaintiffs with appropriate assistance to construct their homes and failed to supervise and inspect the construction performed by Defendants Robinson and Santa Cruz Construction. (Dkt. No. 52 (First Am. Compl.) at ¶¶ 28, 30, 32, 35-38). Plaintiffs' breach of warranty and contract claims therefore turn on the nature and extent of USDA's obligation, if any, to provide assistance to Plaintiffs and to inspect and supervise the construction of their homes. *See Testan*, 424 U.S. at 400; *Neal v. Bergland*, 646 F.2d 1178, 1181 (6th Cir. 1981), *aff'd sub nom. Block v. Neal*, 460 U.S. 289 (1983).

"[T]here can be no right of action against the United States for a contract implied in law." *Goodyear Tire & Rubber Co. v. United States*, 276 U.S. 287, 293 (1928). Thus, to find that USDA had a contractual obligation, such an obligation must be expressly provided for either in the Housing Act of 1949, *as amended*, 42 U.S.C. § 1472, its implementing regulations, or the loan papers. *Bergland*, 646 F.2d at 1181.

Neither Plaintiffs' First Amended Complaint nor their briefing identify any authority generating a contractual obligation. The only contract at issue that Plaintiffs identify is one that each Plaintiff entered into with Defendants Robinson and Santa Cruz Construction—not with USDA. (*See* Dkt. No. 52 (First Am. Compl.) at ¶ 31; Dkt. No. 71-2 (Proposed Second Am. Compl.) at ¶ 31; *see also* Dkt. No. 59-2 (contract between Plaintiff Temara Honore and Defendants Santa Cruz Construction and Robinson)). [2]

The Housing Act and its implementing regulations are likewise of no help to Plaintiffs. As stated in the declaration of Kimme Bryce, Area Director for Rural Development's U.S.V.I. Local Field Office, [3] which Defendant USDA submitted in support of its motion, Plaintiffs' loans were administered by USDA's Rural Housing Service and financed by the Single Family Home-Direct Loan Program ("SFH-DLP") under Section 502 of the Housing Act of 1949, *as amended*, 42 U.S.C. § 1472. (Dkt. No. 59-1 (Bryce Dec.) at ¶¶ 2, 5). Regulations governing the operation of the SFH-DLP program are found, *inter alia*, at 7 C.F.R. § 1924, which contains two relevant subparts: Subpart A, which addresses the planning and performance of construction, *id.* §§ 1924.1-50; and

---

[2] Because Defendant USDA's attack on this Court's jurisdiction is a factual one, the Court may "look beyond the pleadings to decide factual matters relating to jurisdiction." *Cestonaro v. United States*, 211 F.3d 749, 752 (3d Cir. 2000).

[3] Rural Development is an administrative unit of the Rural Housing Service, the division of USDA responsible for Plaintiffs' financing. (Dkt. No. 59-1 (Bryce Dec.) at ¶ 4 n.1). The Farmers Home Administration ("FmHA") was the predecessor to the Rural Housing Service.

Subpart C, which addresses the planning and performance of site development, *id.* §§ 1924.101-150.[4]

Nothing in these regulations requires USDA to inspect or supervise either construction or site development work. To the contrary, the regulations do the opposite.

As for the *planning* of *construction*, Subpart A provides:

> Planning construction and land development and obtaining technical services in connection with drawings, specifications and cost estimates are *the sole responsibility of the applicant*, with such assistance from the County Supervisor or District Director . . . *as may be necessary to be sure that the development is properly planned in order to protect the Agency's security*. The applicant will arrange for obtaining any required services from qualified technicians, tradespeople, and recognized plan services.

*Id.* §§ 1924.5(f)-(f)(1)(i) (emphases added). Other provisions also confirm that USDA's involvement at this stage is cabined to that which is necessary to protect the government's interest. *See, e.g.*, *id.* §§ 1924.5(f)(2)-(f)(2)(i) ("the County Supervisor or District Director, *for the sole benefit of the Agency*, will . . . visit each farm or site on which the development is proposed[.]") (emphasis added); *id.* § 1924.5(h) ("*For the sole benefit of the Agency*, prior to beginning development work, the County Supervisor or District Director will review planned development with the borrower.") (emphasis added).

As for the *performance of construction*, Subpart A provides:

> The County Supervisor or District Director, accompanied by the borrower when practicable, will make final inspection of all development work and periodic inspections *as appropriate to protect the security interest of the government*.

---

[4] Subpart B is reserved. Additional regulations governing the operation of the SFH-DLP Program are found at 7 C.F.R. § 3550, which addresses loan origination and servicing and is immaterial to Plaintiffs' claims against Defendant USDA.

9

*Id.* § 1924.9(a) (emphasis added). Eliminating any residual doubt that these inspections generate any duty on the part of USDA toward the borrower, the regulations continue:

> *The borrower will be responsible for making inspections necessary to protect the borrower's interest. Agency inspections are not to assure the borrower that the house is built in accordance with the plans and specifications. The inspections create or imply no duty or obligation to the particular borrower.* Agency inspections are for the dual purpose of determining that the Agency has adequate security for its loan and is achieving the statutory goal of providing adequate housing.

*Id.* (emphasis added). Again, the regulations place the responsibility of guaranteeing the borrower's interest on the borrower himself: "The Borrower should make enough periodic visits to the site to be familiar with the progress and performance of the work, *in order to protect the borrower's interest.*" *Id.* § 1924.9(b)(5) (emphasis added).[5]

With respect to the *planning* and *performance* of *site development*—which, unlike Subpart A, Subpart C treats concurrently—Subpart C provides:

> All planning and performing development work is *the responsibility of the applicant or developer* . . . All development will be arranged and completed [by the applicant or developer] according to applicable local, state or Federal regulations . . . An applicant or developer for a . . . site which requires technical services . . . must contract for the technical services of an architect, engineer, land surveyor, landscape architect, or site planner, as appropriate[.]

---

[5] The Court notes that 7 C.F.R. § 1924.9 was specifically amended in 1980 to negate any possible government liability. *See* Planning and Performing Construction and Other Development Amendment–Redesignation, 45 Fed. Reg. 39,792 (June 12, 1980) (explaining that the addition of the statement, "These inspections are solely to determine the adequacy of FmHA's security and not for the benefit of the borrower," was necessary because construction inspections are "conducted by FmHA personnel solely to determine adequacy of the FmHA security" and "[l]anguage other than that contained in the final rule may create legal problems by not properly informing the public as to the purpose of these inspections."); *see also Russell v. Harris*, No. 08-cv-00145, 2009 WL 10677138, at *2 n.2 (E.D. Ark. Jan. 14, 2009) (observing that the regulations were "amended in 1980 to disclaim any possible government liability" and that "[t]he revised regulations alert borrowers that they are solely responsible for making inspections necessary to ensure the quality of their homes.").

*Id.* §§ 1924.105(a)-(a)(2)(ii) (emphasis added).

As relevant here, regulations with which the applicant or developer must comply—*per* § 1924.105(a)—include, without limitation, requirements to ensure that the development receives "safe" and "dependable" utilities, *id.* § 1924.107; and to identify "all pertinent subsurface conditions which could adversely affect the structure," such as to ensure that the "soil and geologic conditions" are "suitable" for the development, *id.* § 1924.108. Subpart C contains no requirement that USDA perform any inspections—to benefit the government or otherwise—to ensure this compliance. Indeed, the only inspections it references are those that may be required and performed by other public authorities. *See id.* § 1924.105(a).

In sum, the regulations governing the SFH-DLP program provide: (1) that USDA has no duty to inspect or supervise construction in either its planning or performance phases, and those inspections that it does perform are only those necessary to protect the government's interest; (2) that USDA has no duty to inspect or supervise site development in either its planning or performance phases; and (3) that the borrower-applicant is responsible for performing any inspections or other tasks necessary to protect its interest and to ensure the development's suitability during the planning and performance phases of both construction and site development.

It is no surprise, then, that courts have repeatedly held that these regulations do not oblige USDA to provide borrower-applicants with assistance or to inspect or supervise construction. *See, e.g., Bergland*, 646 F.2d at 1184 (holding that the right of FmHA to inspect a supervised construction of an FmHA-financed home does not imply it has an obligation to do so, and finding that the Housing Act and its implementing regulations impose no obligation on the FmHA "to provide technical assistance or to supervise construction or to inspect"); *Pennbank v. United States*, 599 F. Supp. 1573, 1581 (W.D. Pa. 1985) (finding that the FmHA has "not been statutorily charged

11

with a duty to inspect [construction projects]" and has "effectively disclaimed any implication of such a duty through [its] regulations"), *aff'd*, 779 F.2d 175 (3d Cir. 1985); *Muniz-Rivera v. United States*, 326 F.3d 8, 15-16 (1st Cir. 2003) (finding that the Housing Act and its implementing regulations "operate at such a high level of generality that they are of little use to plaintiffs here" and "neither direct the manner in which [FmHA's] supervision is to be carried out nor specify the taking of the actions that the plaintiffs claim would have prevented their plight"), *cited with approval in George v. Virgin Islands Hous. Fin. Auth.*, No. 97-cv-00177, 2007 WL 6027809, at *2 (D.V.I. Nov. 7, 2007); *Forcum-Lannon, Inc. v. Berry*, 344 F. Supp. 774, 776 (W.D. Tenn. 1972) ("The plaintiff has not cited this Court, nor do we believe there is, any Act or regulation governing the activities of the F[m]HA either indicating or suggesting some duty, created by contract or otherwise, owed by the F[m]HA to the plaintiff."); *Ramsey v. Farmers Home Admin.*, 443 F. Supp. 760, 792 (E.D. Mo. 1978) ("A plain reading of the regulations leaves the Court with but one plausible conclusion: the regulations protect the financial interest of the Government and were not intended to create a right of action against the FmHA." (internal quotation omitted)); *Manstream v. U.S. Dept. of Agric.*, 649 F. Supp. 874, (M.D. Ala. 1986) ("The government did not intend to make itself an insurer of the quality of the workmanship or structures funded with FmHA funds").

In view of the foregoing, the Court finds that Plaintiffs have failed to demonstrate that USDA has any contractual, regulatory, or other obligation to provide assistance to Plaintiffs or to inspect and supervise the construction of their homes. Nor have Plaintiffs identified any other independent basis that creates a right to money damages under the Tucker Act. As such, the Court finds that Plaintiffs have failed to establish that the Government has waived its sovereign immunity so as to provide this Court with subject matter jurisdiction over Plaintiffs' breach of warranty and contract claims against Defendant USDA.

### III. PLAINTIFFS' MOTION TO AMEND

When the time limits for amending pleadings as a matter of course have expired, "a party may amend its pleading only with the opposing party's consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "Leave shall be freely given when justice so requires." *Dole v. Arco Chem. Co.,* 921 F.2d 484, 486-87 (3d Cir. 1990); Fed. R. Civ. P. 15(a)(1)(2). "The policy favoring liberal amendment of pleadings is not, however, unbounded." *Dole,* 921 F.2d at 487. The court, at its discretion, may deny leave to amend when there is undue delay, prejudice, bad faith, or futility. *Mullin v. Balicki*, 875 F.3d 140, 149-50 (3d Cir. 2017). Where "it is apparent from the record that . . . the amendment would be futile," leave to amend may be denied. *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007) (futility is sufficient grounds to deny leave to amend). "An amendment is futile if the amended complaint would not survive a motion to dismiss." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). "The burden is on the party opposing the amendment to show . . . futility." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 700 (E.D. Pa. 2007).

When a proposed amendment concerns subject matter jurisdiction, "a more detailed inquiry is required." *Multicultural Radio Broad., Inc. v. Korean Radio Broad., Inc.*, No. 15-cv-01961, 2017 WL 436250, at *4-*5 (D.N.J. Jan. 31, 2017). Plaintiffs are permitted to amend their complaints to cure defective allegations of jurisdiction, or "technical error[s] in jurisdictional pleading." 3 Moore's Federal Practice § 15.14 (2015) (Matthew Bender 3d ed.) (citing 28 U.S.C. § 1653 ("Section 1653")). Thus, "a plaintiff who has either omitted or incorrectly stated allegations supporting his or her assertion of subject matter jurisdiction may be permitted to amend the complaint in order to demonstrate that such jurisdiction exists." *Multicultural Radio Broad.*, 2017 WL 436250, at *4-*5. However, Section 1653 only "gives . . . district and appellate courts the

13

power to remedy inadequate jurisdictional allegations . . . *not defective jurisdictional facts.*" *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 204 (3d Cir. 2003) (emphasis added).

The Court concludes that amendment of Plaintiffs' First Amended Complaint would be futile here. As set forth above, Plaintiffs could only transcend Defendant USDA's sovereign immunity if there were a substantive source of law to authorize their claims.

The only substantive change in Plaintiffs' Proposed Second Amended Complaint is a minor addition to Plaintiffs' prayer for relief, in which they specify that "should the Court decide not to award money damages from the Defendant USDA, then the Plaintiffs request that the Court consider some measure of loan forgiveness of Plaintiffs' outstanding loan amounts commensurate with the particular physical damages suffered to Plaintiffs['] properties." (Dkt. No. 71-2 (Proposed Second Am. Compl.) at 9-10). As Plaintiffs acknowledge, this "optional measure of relief . . . is neither a claim or defense." (Dkt. No. 78 at 2). Nor is there anything on the record which suggests that Plaintiffs have omitted or incorrectly stated allegations supporting their assertion of subject matter jurisdiction. *Multicultural Radio Broad.*, 2017 WL 436250, at *4-*5. Indeed, Plaintiffs have simply made no effort to address the Court's lack of subject matter jurisdiction based on Defendant USDA's sovereign immunity, despite ample opportunity to do so. (Dkt. No. 78).

Plaintiffs' proposed Second Amended Complaint therefore suffers from the same legal deficiency that the Court has found in their First Amended Complaint. That is, even if the Court granted Plaintiffs' Motion to Amend, the Court would still lack subject matter jurisdiction over Plaintiffs' claims against Defendant USDA because there is no applicable waiver of sovereign immunity.

Accordingly, the Court will deny Plaintiffs' Motion to Amend as futile.

## IV. PLAINTIFFS' REMAINING MOTIONS

Plaintiffs request an evidentiary hearing to "resolve factual issues [regarding the exhaustion of administrative remedies] generated by the limited discovery presented." (Dkt. No. 86 at 5). Plaintiffs further request that the Court defer ruling on Defendant USDA's Second Motion to Dismiss pending this hearing. (Dkt. No. 85). Defendant USDA opposes both motions. (Dkt. No. 88).

The Court's decision today renders both motions moot. Because the Court has resolved Defendant USDA's Second Motion to Dismiss exclusively on sovereign immunity grounds, it finds that a hearing solely on the exhaustion issues is rendered moot, as is a stay to further consider such issues. *See Cost Bros., Inc. v. Travelers Indent. Co.,* 760 F.2d 58, 60 (3d Cir.1985) ("[The] decision whether to grant a stay . . . is committed to the district court's discretion, since it is a matter of the court's inherent power to conserve judicial resources by controlling its own docket.").

Accordingly, the Court will deny Plaintiffs Motions for an Evidentiary Hearing and to Defer Ruling as moot.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendant USDA's Motion to Dismiss and deny Plaintiffs' Motions to Amend, for an Evidentiary Hearing, and to Defer Ruling.

An appropriate Order accompanies this Memorandum Opinion.

Date: September 30, 2022  _____/s/_____
WILMA A. LEWIS
District Judge